UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 10-194-GWU


BONNIE SPARKS PERRY,                                          PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed
      in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

        Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

      Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

      In reviewing the record, the court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

4

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Bonnie Sparks Perry, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of an anxiety disorder and bipolar disorder.  (Tr. 16).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Perry retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-21).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 49, high school education with additional training as a cosmetologist, and lack of transferable skills could perform any jobs if she had moderate limitations in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance

5

and be punctual within customary tolerances, to complete a normal work day or work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to react appropriately with the general public and get along with coworkers or peers without distracting them and exhibiting behavioral extremes, and to respond appropriately to change in the work setting.  (Tr. 42).  The ALJ also specified that she would retain the ability to perform the basic mental demands of unskilled work, including the ability to understand, remember, and carry out simple instructions, to make judgments consistent with the functions of unskilled work, to respond appropriately to supervision, coworkers, and work situations and deal with changes in a routine work setting, and required low stress work of a simple, repetitive nature.  (Tr. 42-3).  The VE testified that such an individual would not be able to perform any of the plaintiff's past relevant work, but identified unskilled jobs that she would be able to perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 43).

On appeal, this court must determine whether the hypothetical factors cited by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Perry alleged disability beginning August 2, 2003 due to anxiety attacks and a bipolar disorder.  (Tr. 106).  She testified that she had stopped working due to anxiety attacks and depression, and despite taking medication and receiving

counseling at a University of Kentucky psychiatry clinic, she had difficulty leaving the house.  If she did go she would time her shopping trips early in the morning or late at night to avoid crowds.  (Tr. 29-35).  Despite avoiding the public, she usually had one or two anxiety attacks per week, whether she got out or not.  (Tr. 38-9).  She also described crying spells and poor sleep.  (Tr. 40).  Her husband did much of the housework, such as cooking, dishes, and laundry, but she did help with the household chores.  (Tr. 35, 40-41).

The ALJ stated that after reviewing the evidence, he found that the plaintiff had medically determinable impairments which could reasonably be expected to produce her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.  (Tr. 17).  See Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).  First, the ALJ described what he felt were inconsistencies between the plaintiff's allegations and the observations he made at the hearing, and observations that examining mental health sources made in treatment notes.  For instance, he noted that the plaintiff was crying when the hearing began but that she stopped crying after he stated that the hearing would not proceed unless she could compose herself.  (Tr. 18, 25).  He interpreted her statements to a consulting psychologist, Dr. Stuart Cooke, that she had pets, watered plants, shopped with her husband, watched television, performed light housecleaning, occasionally drove, watched birds, and got out of the house at least once a week (Tr. 256) as being

7

inconsistent with her statements at the hearing (Tr. 218).  He cited certain treatment notes which indicate that her panic attacks were controlled.  (Tr. 277, 337).

Medical records in the transcript include some remote office notes from 1990 showing that the plaintiff was being given psychiatric treatment for panic attacks before she stopped working.  (Tr. 174-84).  The problems were partly related to a childhood history of physical and sexual abuse. (Tr. 175).  Her family physician, Dr. Scott Moore, diagnosed bipolar disorder and anxiety disorder in 2006.  (Tr. 242).  He prescribed medication and suggested a psychiatric evaluation, as well as providing an excuse from jury duty that year due to a mental disorder which precluded her from sitting in court or making any decisions while there.  (Tr. 242, 250).

Four mental health professionals gave opinions regarding specific restrictions.

Dr. Cooke, the psychologist who examined the plaintiff at the request of the state agency, reviewed some previous records and conducted a mental status examination.  He observed a dysphoric mood, and noted that his receptionist reported that Mrs. Perry began to cry in his waiting room because two men were talking.  (Tr. 255).  She stated that she stayed in her house the majority of the time, although she would go shopping with her husband when not many people were in the store, and go for Sunday drives.  (Tr. 253).  She described panic attacks, for which she took the medication Xanax at least three times a day and more if she left

the house.  (Tr. 253).  She described Xanax and her other medication, Seroquel, as working fairly well, and she denied any major problems with depression.  (Tr. 253-54).  However, she also said that she had lost interest in activities.  (Tr. 254).  She denied socializing other than talking to people on the telephone.  (Tr. 256).  Dr. Cooke diagnosed a panic disorder with agoraphobia and a bipolar disorder, with a Global Assessment of Functioning (GAF) score of 55.  (Id.).  A GAF score of 55 represents moderate symptoms.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Dr. Cooke commented that Mrs. Perry might not be aware of how depressed she was, that she seemed to have difficulty getting along with people for extended periods of time and to have personality conflicts on her job.  In terms of specific functional restrictions, he opined that she would have a "poor" ability to deal with the public, coworkers, and supervisors, and to tolerate the stress and pressure of daily work activity.  She would have a "fair" ability to understand, remember, and follow instructions and to maintain attention for simple, repetitive tasks.  (Id.).

Non-examining state agency psychologists Edward Stodola and Jane Brake reviewed the evidence following the submission of Dr. Cooke's report and commented that the plaintiff was partly credible and that she had not had a good response to recently initiated treatment.  (Tr. 260).  Restrictions were primarily found in her social functioning.  Dr. Stodola reported that Dr. Cooke's report indicated a severe impairment without indicating any marked mental restrictions and "as such,

it is consistent with the evidence and assigned great weight." (Id.).  They both prepared mental residual functional capacity assessment forms.  In Part I, captioned "Summary Conclusions," they indicated that the plaintiff was moderately limited in the same areas as set out in the ALJ's hypothetical question to the VE.  (Tr. 258-9, 309-11).  In Part III, captioned "Functional Capacity Assessment," Dr. Stodola's conclusions differed somewhat from the factors given in the hypothetical question, in that he limited Mrs. Perry's ability to understand, remember, and carry out simple instructions to two-hour segments over an eight-hour work day.  (Tr. 260).[1]

The fourth source to list restrictions was Steven Johnson, a licensed clinical social worker at the University of Kentucky Department of Psychiatry.  Johnson began providing psychotherapy to the plaintiff in conjunction with Dr. Teresa Gevedon, a psychiatrist at the University of Kentucky, who examined Mrs. Perry beginning in December, 2006 on referral from her family physician.  (Tr. 337).  She diagnosed an anxiety disorder and rule out post traumatic stress disorder, assigned a GAF of 60 initially, and planned to adjust her medication.  (Tr. 339).  After several months of counseling and a variety of medication adjustments, Johnson noted minor improvements (Tr. 363), and Dr. Gevedon was reporting GAF scores of 65-70 and 70-75 (Tr. 346, 356, 362-3).

---

[1]The ALJ found in his hearing decision that the plaintiff had the two-hour attention and concentration limitation (Tr. 17), but it was not included in the hypothetical question (Tr. 42-3).

Johnson provided a medical source statement dated June 5, 2007 in which he stated that Mrs. Perry was experiencing anxiety and panic attacks to a level that made it "unadvisable" for her to return to work.  (Tr. 321).  He stated that she would have poor or no ability to deal with the public, deal with work stresses, and maintain attention and concentration and would have a "fair" (defined as "seriously limited but not precluded") ability to follow work rules, relate to coworkers, use judgment, interact with supervisors, and function independently.  (Tr. 320).

The ALJ stated in his decision that he afforded significant weight to the opinions of the state agency psychologists because he felt they were well supported by the treating source reports and Dr. Cooke's psychological test results.  (Tr. 19). He felt that they were consistent with Dr. Cooke's GAF score of 55, but made no mention of Dr. Cooke's specific assessment of a "poor" ability to deal with the public, coworkers, and supervisors and to tolerate the stress and pressure of daily work activity.  He also noted in another point of the opinion Dr. Gevedon's GAF scores of 65 to 75 as being consistent with no more than mild or transient symptoms, but made no mention at all of Steven Johnson's opinion.  The plaintiff objects to this handling of the opinion evidence.

The Commissioner's regulations at 20 C.F.R § 404.1527(d)(2) provide that more weight should be given to opinions from treating sources because they are the most likely professionals to be able to provide a detailed, longitudinal picture of a claimant's impairments "and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations . . . ." However, § 404.1513 provides that licensed clinical social workers, such as Steven Johnson, are not considered an "acceptable medical source" who can be used to establish whether a claimant has a medically determinable impairment. Instead, they are considered one of the "other sources" whose opinions can be used to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 404.1513(d).

The plaintiff points out that Social Security Ruling (SSR) 06-03p provides detailed guidance on how the Commissioner will consider opinions and other evidence from sources who are not "acceptable." The ruling states that the Social Security Act requires the defendant to consider all of the available evidence in every case and

> . . . since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p at *7.

12

The policy of the Commissioner is clearly that in most cases an ALJ is expected to explain the weight given to the opinion of a non-acceptable source. The Commissioner argues at some length in his brief that in this case consideration of Johnson's opinion could not be expected to have had an effect on the outcome of the case, alleging that it is inconsistent with the GAF scores found by Dr. Gevedon, and with his own brief treatment notes.  This argument is considered below.  He also asserts, less plausibly, that Johnson's opinion was consistent with the ALJ's finding that the plaintiff could concentrate for two hours at a time and was limited to simple tasks in a low stress setting with no public contact and minimal interaction of coworkers.  As previously noted, however, the ALJ did not include the two-hour limitation in the actual hypothetical question.  The Commissioner also suggests that the ALJ's discussion of the other evidence was sufficient to allow a subsequent reviewer to follow his reasoning that the opinions of the state agency psychological consultants were entitled to the greatest weight.  This argument also must fail since neither the consultants nor the ALJ explained the striking inconsistency between their findings and the opinion of Dr. Cooke, who allegedly was given great weight, that the plaintiff had a "poor" ability to deal with stress and pressure and with the public, coworkers, and supervisors.

In Cruse v. Commissioner of Social Security, 502 F.3d 532 (6th Cir. 2007), one of the issues on appeal was a statement by a family nurse practitioner who had seen the plaintiff on two occasions and offered a conclusory opinion that she was

"unable to work." Id. at 535. The court noted that the only explanation offered by the ALJ for discounting this opinion was that a family nurse practitioner lacked the credentials for making such a determination. Id. at. 541. Although it ultimately found that SSR 06-03p was not applicable because it had not been implemented at the time of the ALJ's decision, the court found that the ALJ's decision was "devoid of any degree of specific consideration" of the nurse practitioner's functional assessment and if the ruling had been in effect "the ALJ should have discussed the factors relating to his treatment of [the nurse practitioner's] assessment, so as to have provided some basis for why he was rejecting the opinion." Id. It would seem that the opinion offered in Cruse regarding the need for an evaluation of the "other source" assessment was far less compelling than in the present case, where Johnson clearly had a longitudinal treatment relationship with the plaintiff, and gave specific functional restrictions.

The undersigned also notes that in Tracy v. Astrue, Civil Action No. 3:09-59-JMH, 2011 WL 31067 (E.D. Ky. January 5, 2011), Judge Hood rejected the Commissioner's argument that a non-acceptable source opinion could not reasonably have had an effect on the case, noting that the ALJ had found the claimant's statements not entirely credible. He noted that the assessment of a claimant's credibility lay behind SSR 06-03p's requirement that the ALJ evaluate the opinions of otherwise non-acceptable medical sources and that it was necessary for an ALJ to provide more than "boilerplate language" in discounting such an opinion.

Id. at *4.  Essentially, the ALJ could not support his credibility finding on the basis of consistency with the record while ignoring other evidence to the contrary.  Id. at *5.  This same reasoning applies in the present case.

Therefore, the court concludes that the ALJ failed to properly evaluate the non-medical source opinion of Johnson and that both the ALJ and the state agency sources failed to consider the inconsistencies between their conclusions and the specific limitations listed by Dr. Cooke, on whose report their restrictions were ultimately largely based.  Accordingly, a remand will be required for further consideration.

This the 15th day of September, 2011.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**